UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN POSTAL WORKERS UNION, AFL-CIO, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Civil No. 05-1430 (JR)<br>) |
| UNITED STATES POSTAL SERVICE, | )<br>)<br>) |
| Defendant. | )<br>) |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT
AND CROSS-MOTION FOR SUMMARY JUDGEMENT**

Plaintiff American Postal Workers Union, AFL-CIO ("APWU"), opposes Defendant United States Postal Service's motion to dismiss or for summary judgment on the APWU's complaint to vacate a labor arbitration award, and cross moves for summary judgment in favor of the APWU. The arbitration award at issue exceeds the limits the parties have negotiated in their collective bargaining agreement for the necessary results that must flow from certain arbitral conclusions, as well as limits on arbitrators to prevent them from imposing their own brand of industrial justice. For the reasons set forth herein, the APWU asks the Court to deny Defendant's motion to dismiss and to find in favor of Plaintiff's suit to vacate the underlying arbitration award. In support of its opposition and cross-motion for summary judgment, the APWU submits the following Statement of Material Facts Not in Dispute, Memorandum of Points and Authorities, and proposed Order.

Dated: November 28, 2005        Respectfully submitted,

                                                          O'DONNELL, SCHWARTZ & ANDERSON, P.C.

                                                          By: _____
                                                              Melinda K. Holmes
                                                              1300 L Street N.W., Suite 1200
                                                              Washington, DC 20005-4178
                                                              (202) 898-1707
                                                             mholmes@odsalaw.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN POSTAL WORKERS UNION, AFL-CIO, | ) ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil No. 05-1430 (JR) ) |
| UNITED STATES POSTAL SERVICE, | ) ) ) |
| Defendant. | ) ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT AND PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGEMENT**

The American Postal Workers Union, AFL-CIO ("APWU") has brought this suit to vacate a labor arbitration award because the arbitrator's ruling violates the terms and limits of the parties' collective bargaining agreement. This case does not implicate issues or concerns of arbitral authority and discretion to decide grievances and fashion appropriate remedies. When, however, an arbitrator does not abide by the negotiated limits the parties' have placed on remedies in the arbitral forum, and seeks to replace the employer in determining discipline, the arbitrator's decision warrants vacatur.

I.   UNDISPUTED FACTS OF THE CASE

On November 8, 2004, the Postal Service sent a "Notice of Proposed Removal" to Otis I. Coldren, III, a postal clerk at the Philatelic Branch of the West Worthington, Ohio Post Office. (Award at 1, 4-5.)[1] The Postal Service alleged in its Notice that Coldren, an almost thirty year

---

[1] Reference to "Award" refers to Arbitrator Jerry A. Fullmer's Award, dated April 26, 2005, in U.S. Postal Service and APWU, case no. C00C-4C-D 05017281, appended to

veteran of the Postal Service, had misappropriated somewhere between $200 and $250 of postal funds for his personal use. (Award at 1, 4-5.) The Notice indicated that it was "advance written notice that it is being proposed that you be removed from the United States Postal [sic] Service no sooner than thirty (30) days from your receipt of this notice" and advised Coldren of his right to file a grievance contesting the Notice and proposed discipline. (Award at 4-5.)

On November 16, 2004, the APWU filed a grievance at Step 1 of the parties' collectively-bargained grievance procedure, set forth in Article 15 of the National Agreement, concerning the Postal Service's proposal to remove Coldren from his position as a postal clerk. After the Postal Service denied the grievance at Step 1, the APWU appealed the grievance to Step 2 on November 24, 2004. (USPS Ex. 3 at 7; Award at 5.)[2] On December 14, 2004, the Postal Service actually disciplined Coldren as it had proposed to do in November, and issued a Letter of Decision firing Coldren from his job. (Award at 6.) On January 22, 2005, the Postal Service denied the APWU's grievance at Step 2. (USPS Ex. 3 at 5; Award at 6.)

The APWU appealed its grievance to arbitration in accordance with Article 15 of the National Agreement. (USPS Ex. 3 at 1.) An arbitration hearing was held on April 12, 2005, before mutually-selected arbitrator Jerry A. Fullmer. (Award at 1, 6.) Arbitrator Fullmer described the issue to be: "Was the removal of the Grievant, Otis I. Coldren III on November 8, 2004 for just cause? If not, what shall be the remedy?"[3] (Award at 6; Declaration of Greg Bell

---

Plaintiff's Complaint as Exhibit 1.

[2] Reference to "USPS Ex." refers to the Postal Service's exhibits appended to its Motion to Dismiss or in the Alternative for Summary Judgment filed October 7, 2005.

[3] Obviously, Arbitrator Fullmer's statement of the issue was imprecise as regards the date of the grievant's removal, but this error is immaterial to the issue in this suit.

("Bell Dec.") at ¶ 4.) In its closing statement to the arbitrator, the APWU specifically asked that, in light of the Postal Service's actual removal of the grievant in December, 2004, that he be reinstated to his position along with back pay and expungement of his discipline records. (Award at 9.)

Following the hearing, Arbitrator Fullmer issued a fourteen page decision in which he made the following "Conclusion" and "Award":

> VI.   CONCLUSION
>
> Based on the above discussion the conclusion is that the grievance must be sustained on the basis that the removal improperly relied upon elements of record which were invalid. The remedy does not include reinstatement because the evidence does indicate that the Grievant did misappropriate postal funds in the amount of $200.00 to $250.00 to use for personal incidentals.
>
> To the extent that it may not otherwise be clear, the issue concerning the merits is answered in the negative, i.e. the removal of the Grievant Otis I. Coldren III on November 8, 2004 was not for just cause. The award draws its essence from the arbitrator's interpretation of Article 16, Section 1 of the parties' agreement.
>
> VII.   AWARD
>
> Grievance sustained. The remedy requested in the grievance, i.e. that of expungement of the records of the removal from the archives as a matter of record and the granting of back pay for the period between when the Grievant stopped active employment (presumably December 8, 2004 and the date of this Award is granted. No reinstatement is provided. Therefore, despite the above expungement, the Grievant's employment with the Employer shall be considered to have ceased. Should the parties be unable to agree on the amount of back pay owing to the Grievant, the arbitrator retains jurisdiction over any such disputes until April 26, 2006.

(Award at 14.)

The parties' National Agreement sets out both a discipline procedure (Article 16) and a grievance procedure (Article 15). Article 16, Section 1 is entitled "Principles" and, as its name

3

suggests, describes the overriding principles to be applied to the Postal Service's discipline of its employees covered by the National Agreement. Article 16 states that:

> In the administration of this Article, a basic principle shall be that discipline should be corrective in nature, rather than punitive. **No employee may be disciplined or discharged except for just cause** such as, but not limited to, insubordination, pilferage, intoxication (drugs or alcohol), incompetence, failure to perform work as requested, violation of the terms of this Agreement, or failure to observe safety rules and regulations. Any such discipline or discharge shall be subject to the grievance-arbitration procedure provided for in this Agreement, which could result in reinstatement and restitution, including back pay.

(USPS Ex. 2 at 4 (emphasis added).) As expressly stated in Article 16, the National Agreement requires that the Postal Service's discharge of an employee from employment, like that of the grievant, must be for just cause. (Bell Dec. at ¶ 3.) Article 15 of the National Agreement, as described earlier, sets out a grievance procedure that provides a manner in which the APWU can challenge removals from employment as well as other forms of discipline of postal employees covered by the National Agreement. (USPS Ex. 2.) Article 15 also describes the arbitration process for grievances that reach that stage, and includes in Section 5.A the admonition that:

> All decisions of an arbitrator will be final and binding. All decisions of arbitrators shall be limited to the terms and provisions of this Agreement, and in no event may the terms and provisions of this Agreement be altered, amended, or modified by an arbitrator.

(USPS Ex. 2 at 4.)

If an arbitrator finds that there is no just cause for the discharge of a grievant in accordance with Article 16 of the National Agreement, Article 16 requires that the arbitrator reinstate the improperly discharged grievant. (Bell Dec. at ¶ 5.) When Arbitrator Fullmer ruled that there was no just cause for the discharge of the grievant, but nevertheless decided that the grievant's discharge would stand, in effect the grievant was discharged from employment without

just cause. (Bell Dec. at ¶ 5.) In reviewing thousands of arbitration awards concerning the Postal Service's removal or discharge of postal employees covered by the National Agreement, Arbitrator Fullmer's award underlying this case stands out as improper for having granted the APWU's grievance over a discharge, but then failing to reinstate the grievant to employment as required by Article 16 of the National Agreement. (Bell Dec. at ¶ 6.) In all other cases, even when an arbitrator is constrained to reinstate an employee for whom the arbitrator has concluded the Postal Service did not have just cause to remove, the arbitrator has the discretion to determine the conditions of reinstatement such as whether the grievant should be paid back pay for the period the grievant was not working. (Bell Dec. at ¶ 7.)

VIII.   ARGUMENT

    A.    <u>This Case Is Ripe for Resolution on the Parties' Dispositive Motions.</u>

The Court should grant summary judgment where the parties are relying on matters outside the pleadings, but where there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 12(c) and 56 (c); <u>DeGraff v. District of Columbia</u>, 120 F.3d 298, 301 (D.C. Cir. 1997). The APWU's claim is to vacate an arbitration award, the holding of which is undisputed. Because the Court is prohibited from reviewing the facts of the underlying arbitration, there are no issues of material fact to be determined in this case. The issues in this case are purely legal. Summary judgment is appropriate at this time.

    B.    <u>The Court Should Vacate Arbitrator Fullmer's Award Because He Exceed His Authority Under Article 16 of the National Agreement.</u>

There is no question that the standard for vacating Arbitrator Fullmer's award is one that

is highly deferential to the labor arbitration process.[4]  *See* United Steelworkers v. American Manufacturing Co., 363 U.S. 564 (1960); United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574 (1960); United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593 (1960).  Although courts are foreclosed from reviewing the merits of an arbitrated dispute, American Mfg. Co., 363 U.S. at 568 ("[t]he courts...have no business weighing the merits of the grievance..."), an arbitrator's discretion to fashion an award is not unlimited.  Such an award is valid only so long as it "draws its essence from" the parties' contract and "[w]hen the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award." Enterprise Wheel, 363 U.S. at 597.  Moreover, although unions and employers seek out labor arbitrators to interpret and apply their collective bargaining agreements and reach a reasoned and fair solution of their disputes, the flexibility afforded arbitrators, particularly in determining remedies, is not without its constraints.  While unions and employers may leave an arbitrator considerable room to set a remedy appropriate to the particular situation before him or her, a labor arbitrator is nonetheless "confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws

---

[4] This Court has jurisdiction to vacate the arbitration award under Section 1208 (b) of the Postal Reorganization Act.  39 U.S.C. § 1208 (b).  This statute is the postal analogue of Section 301 (a) of the Labor-Management Relations Act of 1947, 29 U.S.C. § 185 (a), the statute under which non-postal labor arbitration awards are enforced.  Courts regularly rely on precedent under Section 301 (a) in deciding cases under Section 1208 (b).  *See, e.g.*, National Ass'n of Letter Carriers v. U.S. Postal Service, 590 F.2d 1171, 1174 (D.C. Cir. 1978).  Sections 1208 (b) and 301 (a) provide judicial redress for collective bargaining agreement breaches and, because arbitration is a matter of contract, suits to vacate arbitration awards are cognizable under 1208 (b) and 301 (a).  United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960); Central Packing Co. of Kansas, Inc. v. United Packinghouse Workers of Am., 195 F. Supp. 188 (D. Kan. 1961).

its essence from the collective bargaining agreement." Enterprise Wheel, 363 U.S. at 597.

Arbitrator Fullmer's award fails to live up to this standard because it ignores and contradicts the fundamental principle on which all discipline of APWU bargaining unit members is premised. As explicitly stated in Article 16 "Discipline" of the National Agreement, the parties mutually agreed that the Postal Service can discipline or discharge an employee only if it does so for "just cause." Just cause is a well-trod arbitral concept, the parameters and details of which all labor arbitrators are familiar. In the instant case, it is not Arbitrator Fullmer's assessment of just cause which is at issue; as the Postal Service admits, Arbitrator Fullmer actually found that the Postal Service did not have just cause for removing the grievant from employment and sustained the APWU's challenge over the Postal Service's failing. What flows from the conclusion that the Postal Service did not discipline the grievant for just cause is the issue in this case. Because the collective bargaining agreement Arbitrator Fullmer was charged with applying explicitly requires just cause, Arbitrator Fullmer was constrained to reinstate the grievant to employment upon finding, as he did, that the Postal Service did not have just cause to discharge the grievant in the first place.

Article 16 of the National Agreement sets out the plain requirement that the Postal Service can discharge an employee only for just cause, a requirement that also sets the exact limits on arbitrators in deciding an APWU challenge to a discharge. It is significant that Article 16 specifies "discipline" as distinct from "discharge" because it can be the case that an arbitrator finds the standard of just cause to be different in the two situations or finds as a remedy to a lack of just cause for a discharge that some lesser form of discipline is justified by the evidence. In both situations, however, the contractual requirement on the Postal Service and, ultimately, on an

7

arbitrator, that the Postal Service's discharge of an employee be taken for just cause means that once an arbitrator has concluded that there was no just cause for a discharge, removing the employee from his or her job is no longer justified and therefore cannot be part of the remedy an arbitrator applies to the Postal Service's violation of Article 16 of the National Agreement.

The principle that the failure of an employer to demonstrate just cause in a discipline case requires a labor arbitrator's reinstatement of the grievant is accepted jurisprudence.  As the United States Supreme Court noted in a case concerning whether reinstatement of a grievant violated public policy, an issue not in contention here, "we must assume that the collective-bargaining agreement itself calls for Smith's reinstatement" where the collective bargaining agreement simply states, like the National Agreement, that "[n]o employee covered by this Agreement may be disciplined or discharged except for just cause." Eastern Associated Coal Corp. v. United Mine Workers of Am., District 17, 531 U.S. 57, 61 (2000); *Brief in Op. to Pet. for a Writ of Cert.*, Case No. 99-1038, 2000 WL 33979692 at n.1 (Feb 18 2000).  Thus, when Arbitrator Fullmer ruled that there was no just cause for the discharge of the grievant, but nevertheless decided that the grievant's discharge would stand, he modified the terms and provisions of Article 16 of the National Agreement and exceeded his authority under the contract.

The terms of the National Agreement and the requirement of just cause have the remedial effect that if there is not just cause for a discharge, discharge cannot then be imposed by an arbitrator without running afoul of the collective bargaining agreement's very terms.  For an arbitrator to find that the Postal Service, for whatever reason, was not justified under the standard of Article 16 for discharging an employee means that an arbitrator is similarly constrained in the

extent of a remedy the arbitrator can dispense. When, as here, there was not just cause for the Postal Service to discharge the grievant, Arbitrator Fullmer "dispense[s] his own brand of industrial justice" to fill the role of the employer in re-instituting the very discipline he found was unjustified. <u>Enterprise Wheel</u>, 363 U.S. at 597. In these circumstances and under Arbitrator Fullmer's own reasoning, therefore, Arbitrator Fullmer's award finding a lack of just cause for discharge but not reinstating the employee fails to draw its essence from the National Agreement.

 The terms of the National Agreement and the APWU's instant suit are nonetheless respectful of the broad discretion afforded labor arbitrators. Even when an arbitrator is constrained to reinstate an employee for whom the arbitrator has concluded the Postal Service did not have just cause to remove, the arbitrator has the discretion to determine the conditions of reinstatement such as whether the grievant should be paid back pay for the period the grievant was not working. In the instant case, the APWU agrees that Arbitrator Fullmer's discretion permitted him several ways of coming to the result he believed was appropriate. For example, if Arbitrator Fullmer believed that discharge of the grievant was ultimately the appropriate outcome, he had the discretion to weigh the impact of the procedural problems with the Postal Service's decision to fire the grievant and determine that just cause did exist for the Postal Service's actions. Alternatively, Arbitrator Fullmer's remedial discretion always permitted him to impose some amount of punishment on the grievant notwithstanding that he was constrained to order the grievant's reinstatement. Even in concluding that there was not just cause for discharge, and therefore, consistent with the National Agreement, limiting his remedial options to exclude discharge which he found could not be justified, Arbitrator Fullmer still had the discretion to establish the terms of the grievant's reinstatement such as denying him back pay for

9

the for the several months he was improperly out of work. Thus, Arbitrator Fullmer's discretion is not at issue or in dispute, except insofar as he permitted his discretion to exceed the limits the parties placed, through Article 16, on remedial options when just cause is lacking.

In reviewing numerous arbitration awards concerning the Postal Service's removal or discharge of postal employees covered by the National Agreement, only Arbitrator Fullmer has granted the APWU's grievance over a discharge, but failed to reinstate the grievant to employment. His award directly conflicts with and exceeds the bounds of Article 16's express requirement that all discharges must be for just cause – where there is no just cause, there can be no discharge. Arbitrator Fullmer's discretion to assess the merits of the APWU's grievance and apply an appropriate remedy for the dispute is not obviated or undermined by the limits the parties have agreed they, and their arbitrators, will be bound by in assessing the propriety of the Postal Service's discharge of an employee. Arbitrator Fullmer's failure to stay within those bounds of the contract taints his award. It should, accordingly, be vacated.

> B.  The "Requested Remedy" in the APWU's Step 2 Grievance is Immaterial to Whether Arbitrator Fullmer's Award Should Be Vacated and the Award is Not Too Ambiguous for the Court to Review.

The Postal Service's primary retort to the APWU's claim for vacatur that the Union did not ask for reinstatement of the grievant is factually incorrect and substantively immaterial. To determine whether the APWU's claim should be dismissed based on an interpretation of what the Union sought as a remedy in the grievance underlying the arbitration award at issue raises a factual dispute that is not necessary or appropriate to resolve in order to decide the issue the APWU's lawsuit presents. Regardless of how the grievance was pled, it is undisputed that the remedy of reinstatement was raised to the arbitrator in the arbitration proceeding and that the

arbitrator decided whether to reinstate the grievant based on the merits of the APWU's grievance.

Apparently prompted by Arbitrator Fullmer's discussion in his award about the specifics of the APWU's grievance over the grievant's proposed removal, the Postal Service contends that, notwithstanding Arbitrator Fullmer's award on reinstatement, he was not required to consider reinstatement and it may have been in error for him to do so. It is unclear, albeit immaterial, to determine what result the Postal Service thinks this has on the APWU's claim here. What is clear, however, is that at the time the Union filed its Step 2 grievance, the grievant's removal had only been proposed so there was no reinstatement that would have been appropriate; that, according to Arbitrator Fullmer himself, the APWU raised the request for reinstatement before the record was closed on the arbitration proceeding, (Award at 9); that the arbitrator noted that "[i]t is probably necessary to address the merits of the Grievant's reinstatement to duty," and went on to do just that,[5] (Award at 9-14); and that the arbitrator's holding regarding reinstatement did not turn on whether it was properly demanded as a remedy in the grievance process. (Award at 14.)

Thus, although Arbitrator Fullmer noted that the original grievance did not specifically note "reinstatement" as a requested remedy, that was not the basis for his decision to deny the grievant reinstatement. If it were, this would be an entirely different case about the correctness

---

[5] The Postal Service's motion to dismiss takes an observation of the arbitrator out of context – rather than saying that the entire arbitration was definitively conducted with reinstatement "not being in play," the full quote of the arbitrator is that "**it could be said** that the whole grievance procedure and the hearing were conducted on the basis of reinstatement not being in play." (Award at 9 (emphasis added).) Given his ultimate award, Arbitrator Fullmer clearly did not think, ultimately, that it was.

of the arbitrator's decision, a dispute which might not be appropriate for the Court's review.[6]  But here, Arbitrator Fullmer did not deny reinstatement on the quality of the APWU's grievance pleadings; as he stated in his award, he did not reinstate the grievant "because the evidence does indicate that the Grievant did misapproriate postal funds..." (Award at 14.)  It is plainly evident from the Award itself, therefore, that the APWU raised reinstatement to the arbitrator, the parties joined issue on whether reinstatement should be ordered, and the arbitrator made a specific and lengthy ruling on reinstatement, ultimately concluding that it was not warranted for substantive reasons other than the conclusion that the APWU had not explicitly sought reinstatement through the grievance procedure.

There is also no ambiguity in Arbitrator Fullmer's award that forecloses the Court's review of the issue raised by the APWU.  The Postal Service claims that the award is ambiguous about whether the arbitrator's finding that the grievant misappropriated funds went towards the arbitrator's decision on the merits of the Union's grievance or towards remedy.  Arbitrator Fullmer did not find that the evidence supporting, he believed, the remedy also supported just cause.  To the contrary, as the Award plainly and repeatedly makes clear, the arbitrator's finding that the grievant misappropriated funds did not rehabilitate the Postal Service's position that it acted with just cause.  Arbitrator Fullmer was explicit that, "[t]o the extent that it may not otherwise be clear, the issue concerning the merits is answered in the negative, i.e. the removal of the Grievant Otis I. Coldren III on November 8, 2004 was not for just cause." (Award at 14.)

---

[6]  The Postal Service's reference to court review of administrative decisions is misplaced.  Because courts are foreclosed from reviewing the merits of grievance, it normally rests with an arbitrator to determine whether a party's purported failings in the grievance procedure bears on the outcome of the dispute.

12

The grievant's misconduct motivated the arbitrator's remedy, thus giving rise to the issue the APWU has filed suit over. There is, therefore, no ambiguity that should confuse the issue before the Court.

III.     CONCLUSION

For these reasons the Court should deny Defendant's Motion to Dismiss or in the Alternative for Summary Judgment and grant Plaintiff's Cross-Motion for Summary Judgment.

Dated: November 28, 2005          Respectfully submitted,

                                       O'DONNELL, SCHWARTZ & ANDERSON, P.C.

                                       By: _____
                                            Melinda K. Holmes
                                            1300 L Street N.W., Suite 1200
                                            Washington, DC 20005-4178
                                            (202) 898-1707
                                            mholmes@odsalaw.com